Freda Dowling v. Commissioner. Richard A. Dowling v. Commissioner.
Dowling v. Commissioner
Docket Nos. 62729, 72690.
United States Tax Court
T.C. Memo 1959-169; 1959 Tax Ct. Memo LEXIS 78; 18 T.C.M. (CCH) 737; T.C.M. (RIA) 59169; August 28, 1959
*78 Patrick J. McDonald, Esq., for the petitioner in Docket No. 62729. Richard A. Dowling, pro se., 1022 Dean Avenue, New York, N. Y. Emil Sebetic, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined the following deficiencies in income tax and additions to tax: Freda Dowling, Docket No. 62729
Additions to Tax, I.R.C. 1939
Sec. 294
Sec.
Year
Deficiency
(d)(1)(A)
294(d)(2)
1952
$11,321.55
$915.36
$686.52
Richard A. Dowling, Docket No. 72690
1952
$ 3,403.27
$320.61
$213.74
The principal issue relates to the taxability of the proceeds of a raffle where one taxpayer (Freda Dowling) had purchased two tickets, and, after receiving the price of one of them from her son, the other taxpayer (Richard Dowling), was declared to be the winner. Findings of Fact Some of the facts have been stipulated and, as stipulated, they are incorporated herein by reference. Petitioner Freda Dowling resides at 1022 Dean Avenue, Bronx, New York, New York. Her return for 1952 was filed with the district director at Albany, New York. Petitioner Richard A. Dowling is Freda's son; and he maintains *79 his permanent residence at 1022 Dean Avenue, Bronx, New York, New York. His return for 1952 was filed with the district director at Albany, New York. During early 1952 the Bronx County Chapter of the Catholic War Veterans of the United States of America, Inc. (hereinafter referred to as CWV) advertised that it would give away a Model Gift Home and a Ford automobile by a drawing at the annual Bronx County Home Show, which was to be held, and was in fact thereafter held from June 23 through June 27, 1952, at the Concourse Plaza Hotel located at 161st Street and Grand Concourse, Bronx, New York, New York. The manner in which persons became eligible for the drawing and the manner in which the drawing took place were as follows: Every person who contributed 50 cents, or multiples thereof, to the CWV received a numbered ticket for each 50 cent contribution; such person's name was written on the correspondingly numbered ticket stub in the book from which the ticket was taken. The individual ticket stubs were placed in a drum which was revolved. One of the ticket stubs was drawn from the drum by a disinterested person; and the person whose name appeared on the ticket stub was declared *80 the winner of the home and automobile. The winner was not required to be present at the drawing; and was not required to present the ticket, received at the time of contribution, in order to receive the home and automobile. Freda's daughter, Dorothy Anne Derosier, obtained a book of tickets, and canvassed her neighborhood, but had some difficulty in selling the tickets. To encourage her, Freda took the first two tickets, numbered R17601 and R17602, from the book and gave her one dollar. The daughter wrote Freda's name on each of the correspondingly numbered ticket stubs in the book; and after selling some additional tickets to other persons, she turned in the contributions which she had collected, together with the ticket book containing Freda's ticket stubs, to the CWV. Some time later, Richard, who was then a college student, saw Freda's ticket, and asked why she had not bought him a ticket. She replied, "Well, take one of those," referring to her tickets, and asked him to give her 50 cents. Richard then gave her 50 cents out of the weekly allowance, which she had previously given him. She, in turn, wrote in pencil on each ticket, "Richard and Mama," stated, "Here, take both *81 of the tickets," and gave them to him. At that time she did not have any hope or expectation that either of the tickets would be drawn as the winner of the house and automobile. The CWV drawing was held on June 27, 1952, as scheduled. A ticket stub bearing Freda's name was drawn and she was declared to be the winner of the home and automobile. Thereafter, under date of June 27, 1952, the CWV trustees conveyed the home and premises located at 1050 Stell Place, Bronx, New York, New York, to Freda. The deed was duly recorded. Under the date of June 27, 1952, the CWV trustees also transferred and delivered to Freda title and possession of a 1952 Ford Mainliner two-door sedan. Freda retained title and possession of the Ford automobile at all times material herein, except for periods during 1953 to 1956 when she permitted her son-in-law to use it. In September of 1952, a man named Altschuler offered to purchase the prize home, and, under date of September 17, 1952, Freda entered into a contract to sell it to him for $25,000, subject to tax, and other adjustments. At that time, he gave her a deposit of $2,500, which she deposited in her checking account with a Bronx branch office *82 of the Chemical Corn Exchange Bank. Thereafter, on January 19, 1953, the closing and sale of the home by Freda to Altschuler took place. At the closing, Altschuler gave Freda two checks to her order: one for $15,000, and one for $7,500, both of which she deposited the next day in her checking account at the Chemical Corn Exchange Bank. At the closing, she gave Altschuler a deed to the home dated January 19, 1953. She paid a brokerage commission of $1,125 on the sale of the home. Freda and Richard discussed the division of the sales proceeds. Freda mentioned that she and her husband had been supporting Richard; that it had taken a considerable amount of money to do so; and that therefore she didn't think he was entitled to a full half share. Richard indicated that he was willing to accept a reduced share. Freda then suggested that $8,000 should be his reduced share; and he agreed. Thereafter, on January 27, 1953, Freda and Richard opened a joint savings account at a branch office of the Dollar Savings Bank; and she deposited $8,000 in the account, which she transferred from her checking account with the Chemical Corn Exchange Bank. The deposit was made in a joint account, so that *83 Freda could make withdrawals on Richard's behalf when he was away from home in college or in the Army. Richard retained possession of the account book, except when he was away from home, during which time Freda had possession of the book and made deposits and withdrawals. In their income tax returns for 1952, Freda and Richard each reported in their income the amount of $1,250, which was one-half of the $2,500 deposit received from Altschuler. Respondent determined that in 1952 the fair market value of the prize house was $24,480 and the Ford automobile $1,190, or a total for the two prizes of $25,670. In determining the deficiency against Freda, he added to the income reported in her 1952 return the amount of $24,420 ($25,670 less $1,250). In determining the deficiency against Richard, respondent added to the income reported in his 1952 return the amount of $11,585 (one-half of $25,670 less $1,250). A declaration of estimated tax for the year 1952 was not filed by either Freda or Richard. Opinion RAUM, Judge: 1. The Commissioner's determination that the fair market value of the property and automobile received as prizes in 1952 was $25,670 is not disputed and must therefore *84 be accepted as correct. However, petitioners contend that these prizes do not constitute taxable income. The point is without merit. : : . We hold that the prizes represent taxable income. 2. A more difficult point is presented by the contention that the income, if any, is to be divided equally between Freda and Richard. Freda bought the two tickets, and it was her name that was recorded on the stubs; she alone was determined to be the winner; and title to the house and automobile were transferred to her alone. On the other hand, Richard had paid Freda the price of one ticket prior to the drawing, and there was plainly an understanding between them that he had an interest. The precise nature of that interest was not articulated between them, no particular ticket was singled out as his, and the matter was left in a vague state, with the words "Richard and Mama" written on both tickets. Notwithstanding the difficulties presented by the record, we think a fair interpretation of the evidence requires the conclusion that each had *85 an interest in both tickets. The rule regularly applied in such circumstances is that where a ticket on a lottery is purchased in the name of one of two persons and they agree prior to the drawing to share any winnings, each person is taxable only upon his agreed share provided that the nominal owner in fact divides the proceeds in accordance with their agreement, even though the agreement be void and unenforceable. ; . Cf. , affirmed per curiam, (C.A. 6); . In the present case, however, there was not an equal division between petitioners, as might have been anticipated from the fact that each paid one-half of the total investment in the two tickets. Nevertheless, there was actually a division between them, whereby Richard received $8,000. Following the theory of the foregoing cases, we hold that $8,000 is taxable as income to Richard and the remainder to Freda. 3. Both Richard and Freda seek some relief by reason of the fact that they reported a portion of the prizes *86 as income for the year 1953, a year that is not before the Court. We have no power to provide for any offset against their liability for 1952. Such relief should be forthcoming by administrative action. 4. The Commissioner has conceded error with respect to his additions to tax under Section 294(d)(2), but continues to claim the additions determined under Section 294(d)(1)(A). No evidence has been presented that would render Section 294(d)(1)(A) inapplicable and we hold the additions proper, as revised downward by reason of our disposition of the principal issue above. Decisions will be entered under Rule 50.